| | | |
|---|---|---|
| Danielle Flanagan<br>14500 Abbeville Place<br>Upper Marlboro, MD 20774 | * | IN THE |
| | * | UNITED STATES DISTRICT |
| Plaintiff, | * | COURT |
| v. | * | FOR THE |
| | * | DISTRICT OF COLUMBIA |
| W-USA TV, Tegna Inc.,<br>4100 Wisconsin Avenue NW<br>Washington, D.C. 20016 | * | |
| | * | |
| Defendant. | * | |
| Serve on Resident Agent:<br>CT Corporation System<br>1015 15th St. NW, Suite 1000<br>Washington, D.C. 20005 | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Danielle Flanagan, by and through her undersigned counsel, Paul V. Bennett, Esq., and the Law Office of Bennett and Ellison P.C., hereby files suit against the Defendant W-USA TV Inc., Tegna ("W-USA") and claims as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. (hereinafter referred as "Title VII").

2. That all the actions complained of herein took place in Washington, D.C.

3. That at all times relevant hereto, Danielle Flanagan, Plaintiff, was a resident of the State of Maryland.

1

4. That Defendant, W-USA is a Delaware corporation with its principal place of business in Washington, D.C.

5. Plaintiff received a notice of suit rights letter on September 3, 2019. Therefore, Plaintiff has properly exhausted her administrative remedies prior to filing suit in a timely manner.

## STATEMENT OF FACTS

6. Plaintiff is female, who is 50-years old, born in 1969, and at all times relevant to this matter Defendant was aware of her gender and age.

7. Plaintiff was hired by Defendant as an engineer on or around December of 1996.

8. Throughout all the years that Plaintiff was employed by Defendant, her performance always met or exceeded her employer's legitimate expectations.

9. At all times relevant to this matter, Joel McDonald, a male, was Plaintiff's direct supervisor.

10. At all times relevant to this matter, Rob Gibson, a male, was Joel McDonald's supervisor, directly in Plaintiff's chain of command.

11. At all times relevant to this matter, Plaintiff was the only female in the maintenance department.

12. On or around June of 2016, Plaintiff was called into Mr. McDonald's office due to a cameraman not writing up a ticket for a broken camera. This was not part of Plaintiff's position, or job responsibility, yet she was blamed by Mr. McDonald for this incident.

13. Based upon information and belief, two other male employees, Aubrey Bryant and Steve Garifo were not being treated in a similar manner by Mr. McDonald.

14. Mr. McDonald commented to Plaintiff regarding this incident, that she did not understand him, because she was "emotional," and a "pleaser."

15. On or about July 2016, Plaintiff left for 5-weeks on disability for a medical procedure, and Mr. McDonald who is not a doctor, questioned her needing this much time for the procedure despite it being her doctor's advice.

16. On or about September of 2016 the day after returning from disability leave, Plaintiff was moved to the less desirable night shift by Joel McDonald.

17. This was a worse shift for Plaintiff to be on, because the hours were much later and less resources were available and she was moved to this shift despite having seniority over a younger male co-worker Steve Garifo, who was not moved to the night shift.

18. After moving Plaintiff to the night shift, Defendant another male engineer Mr. Collin Hartsell, (approximately 30 years old) who was given the more desirable day shift. This engineer then left the company on or around September 2017, and another younger male engineer David Donaldson was hired in or around December of 2017 and also given the day shift.

19. On or around July 2016, Plaintiff complained to supervisor McDonald about younger male employees with less experience and seniority receiving preferential shifts, but nothing to address her complaints or concerns.

20. In January or February of 2017, Mr. McDonald reserved hotel rooms for male employees of the company during a snowstorm, but did not reserve one for Plaintiff. Plaintiff was forced to sleep in a chair at the station, and was not allowed to go home until the next morning.

21. On May 11, 2017, a microphone was taken out of service and placed on Mr. McDonald's desk. A ticket was not written up by Sam Cook, male, under 40, yet Plaintiff was

reprimanded for this failure, even though she was in no way responsible for breaking the microphone or for not writing the ticket.

22. On September 19, 2017, Plaintiff was having an issue writing a report and went to Tom Krogel, male, age unknown for assistance. After finding out that Plaintiff had done so, Mr. McDonald told Mr. Krogel not to help Plaintiff with anything at work. Such an instruction to a co-worker was contrary to normal practice and procedures.

23. On September 25, 2017, Plaintiff received an email from Joel McDonald saying she would work nights Monday, Tuesday, and Thursday, and days on Wednesday and Friday due to her International Brotherhood of Electrical Workers ("IBEW") negotiation scheduling request. Mr. McDonald expressed concern that another employee Collin Hartsell, (male approximately age 30), would be flip-flopping because of the rotating day and night schedule, but expressed no concern for Plaintiff having to do the same thing.

24. On December 14, 2017, Joe Zentner, (male age unknown), Plaintiff's union representative, brought to Plaintiff's attention she was scheduled in Microwave and Maintenance on December 22, 2017. Plaintiff sent an email to management complaining about being the only engineer requested to perform studio technician duties outside of the engineering department. Plaintiff pointed out that she was the only person in the company required to do two jobs at once, an operator's job and a maintenance job.

25. On December 20, 2017, Plaintiff sent an email to Aubrey Bryant, reminding him of her vacation request for January 1, 2018. Mr. McDonald emailed her back saying she needed to work because they had a "full schedule". Plaintiff had been scheduled as "off" on the schedule submitted to Mr. McDonald on October 30th. It was contrary to normal practice

and procedure to revoke a previously approved scheduled day off, as was done in this instance by Mr. McDonald. Plaintiff put in for this vacation time 10 months in advance which is far beyond what was required by company policy. In addition, Mr. McDonald gave Steve Garifo this same requested day off, despite his request being submitted after the Plaintiff's.

26. Plaintiff ended up working on January 1, 2018, but this was not the first time she had an already approved vacation cancelled by management.

27. On April 3, 2018. Plaintiff and union representative Joe Zentner, male, age unknown met with Richard Dyer, male, age unknown who was the President of WUSA, to discuss Mr. McDonald's treatment of Plaintiff.

28. Plaintiff in the presence of Mr. Zentner explained to Mr. Dyer that Mr. McDonald was treating Plaintiff unfairly because of her gender and age. She noted the company has a reputation of hostility towards older employees. Plaintiff also provided a letter regarding this conduct to Mr. Dyer. Mr. Dyer stated he considered the offenses by Mr. McDonald to be serious, and said he would look into it, but did not ever do anything regarding Mr. McDonald's conduct.

29. On April 5, 2018, Plaintiff met with Amanda Levi, (female age unknown) from WUSA's Human Resources and with Department IBEW business manager Ken Brown, (male age unknown). Plaintiff asked Ms. Levi for her evaluation to be reviewed, which did not happen and she consequently received no pay raise for the first time in 22 years with the company.

30. Plaintiff informed Ms. Levi at that time that Mr. McDonald had a systematic problem with women in the office and submitted a list of eight names of women who had been harassed by Mr. McDonald.

31. On April 17, 2018, Plaintiff sent a formal letter to Amanda Levi about the mistreatment of her by Joel McDonald.

32. On or about April 2018, Plaintiff put in a request for vacation, and Mr. McDonald told Aubrey Bryant, who at that time was the schedule creator for the maintenance department, to remove Plaintiff's request for vacation.

33. On April 27, 2018, Plaintiff was reprimanded for repairing a camera she was told to repair on her day off. On April 21, 2018, Plaintiff had been asked by Steve Garifo, to help with a camera that was broken. Although this request was made on her day off Plaintiff agreed to come to work repair the camera. Mr. Garifo had been told to repair the camera, yet he was not disciplined for failing to do so.

34. Concurrently in April of 2018, Plaintiff asked to be assigned to work with David Donaldson, (male approximately 30), to improve her technical skills. However, Plaintiff and Mr. Donaldson were assigned different work schedules, and for two weeks they were not even in the building at the same time.

35. Plaintiff complained about this inability to train with Mr. Donaldson to Mr. McDonald and to Ms. Levi from Human Resources, but her schedule was never adjusted, so Plaintiff never received additional technical training.

36. On May 7, 2018, Plaintiff met with Amanda Levi and stated to her how uncomfortable she was in 1-on-1 meetings with Mr. McDonald, and requested to stop them.

37. On May 24, 2018, Plaintiff met with Anna Avelar, a co-worker, in Human Resources, during which she explained she was losing sleep, having anxiety attacks, and felt constant harassment by Mr. McDonald. She said the stress of the 1-on-1 meetings was making this worse and she had lost thirty pounds by this time.

38. Plaintiff was nevertheless forced to continue these meetings with Mr. McDonald and was the only person in the company that was required to have them. This practice continued despite her request to only meet with him with a neutral third-party present.

39. On May 11, 2018, Plaintiff was reprimanded for not having enough lights installed behind the new newsroom set. In a meeting afterwards, Joel McDonald's supervisor Rob Gibson, (male age unknown) threw a piece of paper at Plaintiff and said demeaning things to her. Plaintiff complained to Mr. Gibson about Mr. McDonald's behavior towards her, and Mr. Gibson responded to Plaintiff by stating, "deal with it."

40. On May 15, 2018, Plaintiff met with Joe Zentner, Amanda Levi, Joel McDonald, and Rob Gibson. Mr. Gibson again threw a piece of paper at Plaintiff in this meeting and he was rushed out of the room by Ms. Levi. Ms. Levi admitted to witnessing Mr. Gibson throw the paper.

41. On May 29, 2018, Plaintiff received an email from Mr. McDonald instructing Plaintiff to not take overtime. This directive came despite Mr. McDonald asking her to come in early to cover a shift for an employee on vacation about two-weeks earlier. Plaintiff was reprimanded for working approximately one hour of overtime earlier in May 2018. No other employees of the maintenance staff were ever questioned or reprimanded for such a small amount of overtime since, the staff was cut from 12 to 4 people.

42. On June 10, 2018, Plaintiff was restricted by Rob Gibson from entering his or Mr. McDonald's office despite her need to enter offices to check for leaks and other maintenance issues.

43. Another female employee Tamika McDougald, (age unknown) received similar treatment to Plaintiff by Mr. McDonald. Ms. McDougald asked for additional training and instead of receiving her training she was removed from the schedule for those two days.

44. David Donaldson, (male approximately 30-years-old) received training for audio projects and was given day shifts, despite having less experience and tenure than Plaintiff. Plaintiff asked to come in to work early for two hours for three days with Mr. Donaldson for free to receive training, but was denied. Her male co-workers were not denied for requesting training.

45. Plaintiff's male colleagues, Collin Hartsell and Logan (last name unknown) were not ridiculed or spoken to the way Plaintiff was by Mr. McDonald or Mr. Gibson.

46. Collin Hartsell, who was approximately a 30-year-old male was given the day shifts, and audio projects that Plaintiff previously worked on.

47. Due to this the consistent severe and pervasive hostile treatment of Plaintiff by Mr. McDonald and Mr. Gibson, Plaintiff felt compelled to resign, which she did on or about February 28, 2019.

48. That Defendant is vicariously liable for the conduct of its supervisory employees carried out in the course and scope of their employment. All the acts set forth above by the supervisory employees were carried out in the course and scope of their employment.

## COUNT I
## GENDER DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. §§ 2000e et seq.

49. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as fully set forth herein.

50. That Plaintiff was qualified and satisfactorily performing her duties as an Engineer for Defendant.

51. That Defendant allowed and carried out aforementioned acts of discrimination against Plaintiff because of her gender.

52. That there were not any, similarly, situated male employees who were treated in this manner, and that Plaintiff was persistently treated in a disparate manner in the workplace by Mr. McDonald.

53. Plaintiff complained several times to Human Resources regarding the discriminatory treatment towards her by Mr. McDonald because of her gender, yet nothing was ever done to address this.

54. Similarly situated male employees were not treated in the discriminatory manner that Plaintiff was. Aubrey Bryant a male approximately age 56 was not subjected to similar terms and conditions of employment by Mr. McDonald in the way Plaintiff was. Collin Hartsell (Male approximate-age-30), and David Donaldson (Male approximate age-30), were given more favorable projects and shift assignments, and not subjected to hostile and belittling treatment by Mr. McDonald. This occurred despite the fact they were not as experienced or had as much tenure as Plaintiff.

55. The acts constitute unlawful employment pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

56. The effect of the unlawful practices complained of above deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee because of her gender. (female).

57. The unlawful employment practices complained of above were intentional.

58. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

59. The intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or reckless indifference with willful disregard to Plaintiff's civil and constitutional rights.

60. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

## COUNT II
## AGE DISCRIMINATION
### (Disparate Treatment)
Age Discrimination in Employment Act of 1967, as amended,
29 U.S.C. § 621, *et seq.*

61. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as fully set forth herein.

62. Plaintiff was qualified and satisfactorily performing her duties as an Engineer.

63. Plaintiff was subjected to adverse treatment, including harassment, humiliation, wrongful cancelling of vacation time, unfavorable shift assignments, and wrongful reprimands.

64. Plaintiff's age was the "but-for" factor as similarly situated younger employees, Collin Hartsell (Male approximate-age-30), and David Donaldson (Male approximate age-30),

were given more favorable projects and shift assignments. They were also not subjected to discriminatory and belittling treatment by Mr. McDonald. This occurred despite the fact they were not as experienced or had as much tenure with WUSA as Plaintiff.

65. That the intentional discriminatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

66. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

67. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

### COUNT III
### HOSTILE WORK ENVIRONMENT
### (Gender)
### Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. §§ 2000e et seq.

68. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as fully set forth herein.

69. That the actions set forth by Mr. McDonald were designed to humiliate, harass, and intimidate Plaintiff, and this conduct did not occur with any male employees.

70. That Mr. McDonald engaged in severe and pervasive conduct towards Plaintiff during her employment tenure with Defendant.

71. That the severe and pervasive conduct by Defendant towards Plaintiff during her employment tenure were because of her gender. (female).

72. That the hostile conduct by Mr. McDonald included, but was not limited to frequent and baseless reprimands of Plaintiff, assignments to undesirable shifts despite her having

more experience and tenure, repeated cancellation of approved vacation requests and schedules, and he would yell and belittle Plaintiff constantly.

73. Mr. Gibson's acts of throwing paper at her on more than one occasion during company meetings as well as yelling at her, also added to the overall hostile work environment that Plaintiff was forced to endure.

74. Mr. McDonald's and Mr. Gibson's hostility and harassment caused Plaintiff severe emotional distress as she had to go to therapy and eventually see a psychiatrist.

75. Mr. McDonald's actions were willful, reckless, done with malice as it was known around the company by a multitude of people that he harassed, mistreated, and was hostile toward female employees.

76. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish as well as to incur legal fees and court costs.

77. That Defendant knew of the conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

78. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

**COUNT IV**
**HOSTILE WORK ENVIRONMENT**
**(Age)**
**Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. §§ 2000e et seq.**

79. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as fully set forth herein.

80. That the actions set forth by Mr. McDonald were designed to humiliate, harass, and intimidate Plaintiff, and this conduct did not occur with any employees under 40.

81. That Mr. McDonald engaged in severe and pervasive conduct towards Plaintiff during her employment tenure with Defendant.

82. That the severe and pervasive conduct by Defendant towards Plaintiff during her employment tenure were because of her age.

83. Mr. McDonald's actions were willful, reckless, done with malice as it was known around the company by a multitude of people that he mistreated and was hostile towards older employees.

84. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish as well as to incur legal fees and court costs.

85. That Defendant knew of the conduct of Defendant's supervisory employees against Plaintiff and failed to take prompt corrective actions.

86. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

## COUNT V
## <u>RETALIATION</u>
## <u>(Adverse Actions and Protected Activity Deterrents)</u>
## Title VII of the Civil Rights Act of 1964, as amended
## 42 U.S.C. §§ 2000e <u>et seq.</u>

87. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as though fully set forth herein.

88. Plaintiff complained to Amanda Levi from Human Resources and to company President Richard Dyer in April of 2018, about the harassment and hostile conduct of her supervisor Joel McDonald. This action constituted a legally protected activity under Title VII.

89. After filing the grievance, the Plaintiff experienced substantially worse treatment from Joel McDonald and his supervisor Rob Gibson.

90. After complaining, Plaintiff was reprimanded for things she did not do, she was denied access to offices she needed to complete the tasks of her job, she was yelled at persistently, she had additional vacation requests denied or get cancelled without reason, and even had objects thrown at her on multiple occasions in meetings. These acts by Defendant constitute an unlawful act of retaliation under Title VII.

91. Defendant's employees Rob Gibson and Joel McDonald were directly responsible for this conduct. Defendant did not discipline either of these employees for their conduct despite Plaintiff's legally protected action.

92. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

93. That the intentional retaliatory actions complained of above were done with malice and/or reckless indifference to Plaintiff's civil rights.

94. The acts of retaliation for complaining of gender discrimination and a hostile workplace constitute unlawful employment practice pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

95. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

**COUNT VI**
**GENDER DISCRIMINATION**
**(Disparate Treatment)**
**D.C. Human Rights Act of 1977**
**D.C. Code §2-1402.11**

96. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as though fully set forth herein.

97. That Plaintiff was qualified and satisfactorily performing her duties as an Engineer for Defendant.

98. That Defendant allowed and carried out aforementioned acts of discrimination against Plaintiff because of her gender.

99. That there were not any, similarly-situated male employees who were treated in this manner, and that Plaintiff was persistently harassed in the workplace by Mr. McDonald.

100. Plaintiff complained several times to Human Resources regarding the discriminatory treatment towards her by Mr. McDonald because of her gender, yet nothing was ever done to address this.

101. Similarly situated male employees were not treated in the discriminatory manner that Plaintiff was. Aubrey Bryant was not harassed by Mr. McDonald in the way Plaintiff was. Collin Hartsell, and David Donaldson were given more favorable projects and shift assignments, and not subjected to harassment and belittling treatment by Mr. McDonald. This was despite the fact they were not as experienced or had as much tenure as Plaintiff.

102. The aforementioned acts constitute unlawful practice pursuant to the D.C. Human Rights Act of 1977, D.C. Code §2-1402.11.

103. The effect of the unlawful practices complained of above deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee because of her gender. (female).

104. The unlawful employment practices complained of above were intentional.

105. The discriminatory actions, as set forth above, has caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, loss of future earnings, damage to

professional reputation, severe emotional distress, pain and suffering, and humiliation and mental anguish.

106. The intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or reckless indifference with willful disregard to Plaintiff's civil and constitutional rights.

107. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

## COUNT VII
## AGE DISCRIMINATION
## (Disparate Treatment)
## D.C. Human Rights Act of 1977
## D.C. Code § 2-1402.11

108. Plaintiff hereby restates and incorporates paragraphs 1 through 48 of this Complaint as though fully set forth herein.

109. Plaintiff was qualified and satisfactorily performing her duties as an Engineer.

110. Plaintiff was subjected to adverse treatment, including harassment, humiliation, wrongful cancelling of vacation time, unfavorable shift assignments, and wrongful reprimands.

111. Plaintiff's age was the "but-for" factor as similarly situated younger employees, Collin Hartsell (Male approximate-age-30), and David Donaldson (Male approximate age-30), were given more favorable projects and shift assignments, and not subjected to harassment and belittling treatment by Mr. McDonald. This was despite the fact they were not as experienced or had as much tenure with WUSA as Plaintiff.

112. That the intentional discriminatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

113. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

114. Wherefore, Plaintiff demands judgment against Defendant for damages as set forth below.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

## **PRAYER FOR DAMAGES**

WHEREFORE, for the forgoing reasons, Plaintiff Danielle Flanagan, demands judgment against Defendant WUSA TV-9 Tegna Inc., as follows:

a. Compensatory damages in the amount of $500,000.00.

b. Punitive damages in the amount of $1,000,000.00.

c. Lost wages to be calculated at trial.

d. Backpay and interest on same.

e. Clean personnel record and good professional reference.

f. Reasonable attorneys' fees and court costs.

g. Prejudgment and post judgment interest.

h. And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,

Paul V. Bennett, Esq.
Bar # 427358
Bennett & Ellison P.C.
2086 Generals Highway, Suite 201
Annapolis, MD. 21401
Phone: (410) 974-6000
Facsimile: (410) 224-4590
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

## PRAYER FOR A JURY TRIAL

Danielle Flanagan, Plaintiff, hereby requests a trial by jury in the above referenced matter for all Counts triable by right thereof.

Respectfully Submitted,

Paul V. Bennett, Esq.
Bennett & Ellison P.C.
Bar# 427358
2086 Generals Highway, Suite 201
Annapolis, MD. 21401
Phone: (410) 974-6000
Facsimile: (410) 224-4590
Email: pbennett@belawpc.com
*Attorney for Plaintiff*